UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAWN NITEK,

        Plaintiff,

        v.                                  Case No. 19-C-773

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

## DECISION AND ORDER REVERSING DECISION OF COMMISSIONER

Plaintiff Dawn Nitek filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. Plaintiff claims that the ALJ erred in formulating her residual functional capacity (RFC), weighing a consulting examiner's opinion, assessing medical evidence relating to her small fiber neuropathy, and in evaluating her statements concerning her symptoms. For the reasons that follow, the decision of the Commissioner will be reversed and remanded for further proceedings.

## BACKGROUND

Plaintiff filed an application for supplemental security income on June 16, 2015, alleging disability beginning on January 27, 2014. R. 79. Plaintiff later amended her onset date and claimed disability beginning on the date she filed her application, June 16, 2015. *Id.* In her initial application, she alleged she was disabled due to her spinal degeneration, radiculopathy, arthritis, ulcers, knees, heart, COPD, and depression. R. 219.

After her application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ. On March 7, 2018, ALJ Brent Bedwell conducted a video hearing where Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 12.

At the time of the hearing, Plaintiff was 49 years old. She did not have an income and was receiving food stamps. R. 19. She explained she does not have a driver's license due to past intoxicated driving and depends on friends for transportation. *Id*. Plaintiff testified that she has an eleventh-grade education and has not tried to complete a GED or HSED program. R. 18.

Plaintiff described her past work. In 2013, she worked for Seek Careers, a staffing agency that placed her in temporary positions where she worked first in toilet paper production and later in vitamin production. R. 20. At the job making vitamins, Plaintiff spent ten hours a day on her feet and was required to clean and put tanks that were used in production in a washer. R. 21–22. This activity, which involved moving the tanks with a skid on the floor and a jack, caused her an injury. *Id*. Plaintiff also worked as an assembly line worker for another period of time. R. 23. She had no earnings from 2015 through 2017. *Id*.

Plaintiff testified that she has been living in a car for four years. R. 24. She said she relies on friends for help, owes them money, and will be living on the streets if she does not receive social security. *Id*. Plaintiff spoke of her pain as extreme and constant. *Id*. At the time of the hearing, Plaintiff said she was prescribed oxycodone for pain, Lyrica for the arthritis in her back, and depression medicine. R. 25. She was also prescribed tramadol to alternate with and "wean" herself off of the oxycodone. *Id.* Plaintiff said despite the medications, she is not pain-free. *Id*. Due to the medications, she testified she suffers memory loss. R. 26. Plaintiff said her pain is only temporarily relieved by heat or ice. R. 26–27.

Plaintiff testified she had recently slipped on ice after having a couple beers and broke bones in her leg, requiring five pins and a rod placed inside her leg. R. 27. She was using a walker and was non-weight bearing at the time of the hearing. R. 28.

The ALJ asked Plaintiff if, before she broke her leg and while she was homeless and living with friends, she could do daily tasks. R. 28–29. She did not describe any activities in detail but said she still tries to take walks as her doctor says it helps with the nerve damage. R. 29. Plaintiff then discussed how she had lost friends because she could not pay them back money and they were sick of her being around all the time. *Id*.

After discussing Plaintiff's planned rehab for her leg, Plaintiff's counsel asked Plaintiff his own questions. R. 30. Counsel asked Plaintiff to describe her back pain, which she said was in her lower back near her tailbone where she had surgery and on her left side at the sciatic nerve and continuing down her left leg to her toes. *Id*. She also spoke about her uncontrollable bladder symptoms, which have occurred daily for a long time. R. 30–31. Plaintiff also noted three previous falls, including one the previous year where she fell 13 steps and broke her leg. R. 31. Plaintiff then testified about her other symptoms. She said that from 2015 to 2017 she could only stand for six to ten minutes while doing dishes before needing to rest due to back pain. *Id.* Her pain is so great that she is unable to sleep through the night. R. 32. Plaintiff also stated she has unresolved right shoulder problems. *Id*. Plaintiff said her pain causes migraine headaches that affect her neck and occur about every other day and last for the entire day. R. 32–33. Besides medication, Plaintiff had tried injections, but they did not relieve her pain; neither a spinal cord stimulator nor a pain pump had been considered. R. 33. Plaintiff testified she is able to tie her shoes if she is sitting and put her socks on but stated it was difficult to do so. *Id*.

In an eighteen-page decision dated June 19, 2018, the ALJ concluded that Plaintiff is not disabled. R. 79–96. The ALJ's decision followed the five-step sequential process for determining

3

disability prescribed by the Social Security Administration (SSA). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 16, 2015. R. 81. At step two, the ALJ determined that Plaintiff had the following severe impairments: degenerative disc disease status post-surgeries, depressive disorder, and anxiety disorder. *Id*. At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 83.

Next, the ALJ assessed Plaintiff's residual functional capacity (RFC), finding that she can perform sedentary work except that:

> the claimant cannot climb ladders, ropes or scaffolds; she cannot operate foot controls; she can occasionally stoop, kneel, crouch, crawl and climb ramps and stairs; and she is limited to unskilled work and to jobs that have only occasional decision making, changes in the work setting and interaction with the public, co-workers and supervisors.

R. 85. During the hearing, the ALJ posed a hypothetical question to the vocational expert (VE), asking whether an individual (similar to Plaintiff in age, education, and work experience) with this RFC would be able to perform the past relevant work that Plaintiff had performed. R. 36–37. The VE testified that this hypothetical person could not perform the past work Plaintiff had done. R. 37. However, the VE testified that there were jobs in the national economy that the hypothetical individual with this RFC could perform, including as a sorter, document preparer, and final assembler. *Id*. The VE testified that if the hypothetical was modified to require two additional unscheduled breaks of 10 to 15 minutes per day, these jobs would be unavailable to the hypothetical person. R. 37–38. If the hypothetical was modified to require a sit/stand option, that would also eliminate the available jobs, according to the VE. R. 39. At step four, the ALJ concluded that Plaintiff was unable to perform any past relevant work. R. 94. However, based on the testimony from the VE, the ALJ concluded at step five that Plaintiff, based on her RFC, would be able to perform work that existed in significant numbers in the national economy. R. 95. The

4

ALJ concluded that Plaintiff was not disabled.  R. 96.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

## LEGAL STANDARD

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence.  42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).  Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion."  *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010).  Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn.  *Jelinek*, 662 F.3d at 811.  The ALJ must provide a "logical bridge" between the evidence and conclusions.  *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination.  Failure to do so, unless the error is harmless, requires reversal.  *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006).  In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.  *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998).  Finally, judicial review is limited to the rationales offered by the ALJ.  *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

Plaintiff advances a number of challenges to the ALJ's decision, but the court finds that her claim that the ALJ failed to adequately account for her moderate limitations in concentration, persistence, and pace (CPP) in the RFC he formulated is enough to require remand under the law of this circuit.  Both the RFC the ALJ formulated and the hypothetical question he posed to the

5

Case 1:19-cv-00773-WCG   Filed 11/23/20   Page 5 of 7   Document 29

VE limited Plaintiff to unskilled work, occasional decision making, occasional changes in the work setting, and occasional interaction with the public, co-workers, and supervisors. Plaintiff contends that these limitations do not capture her moderate limitations in CPP. Her contention is well supported by the caselaw of this circuit.

The Seventh Circuit addressed this issue at some length in its recent decision in *Martin v. Saul*:

> CPP limitations are familiar territory, especially in recent years. Over many cases we observed a recurring error: ALJs would limit a claimant to "unskilled work" and conclude that by doing so they had incorporated a claimant's full range of CPP limitations—challenges concentrating, staying on task, and maintaining a given pace in the workplace. Time and again we have disagreed. *See, e.g.*, *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) (reversing and explaining that the observation that someone can perform simple tasks says nothing about whether she can do so over the course of a full workday); *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019) (emphasizing that there is no basis for concluding that eliminating jobs with production quotas can serve as a proxy for CPP limitations); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018) (reversing because the hypothetical question posed to a vocational expert about the claimant's RFC did not include accommodations for CPP limitations).
>
> In this area of the law, "unskilled work" is a term of art (indeed one defined by regulations) and refers to tasks that are not complex and do not take long to learn. *See* 20 C.F.R. § 404.1568(a). As we have labored mightily to explain, however, the relative difficulty of a specific job assignment does not necessarily correlate with a claimant's ability to stay on task or perform at the speed required by a particular workplace. *See, e.g.*, *Winsted v. Berryhill*, 923 F.3d 472, 477 (7th Cir. 2019) (explaining that limiting a claimant to simple and routine tasks did not account for his concentration and functioning deficits). Put another way, someone with problems concentrating may not be able to complete a task consistently over the course of a workday, no matter how simple it may be.

950 F.3d 369, 373–74 (7th Cir. 2020).

In this case, the ALJ explicitly found that "[w]ith regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation." R. 84. Yet, the hypothetical question he posed to the VE and the RFC he determined for Plaintiff failed to account for the non-exertional limitations the Court of Appeals has held such a finding entails. The court has explicitly held that limiting a claimant to unskilled work "does not correlate with a claimant's ability to stay on task

6

[persistence] or perform at the speed required by a particular workplace [pace]." *Id*. at 373. Because the ALJ failed to incorporate corresponding limitations into the RFC and the hypothetical question posed to the VE, his decision cannot stand.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. Although the court has concluded that remand is warranted based on the errors committed by the ALJ in formulating and posing the hypothetical question are sufficient to require remand, the Commissioner should also address Plaintiff's claims that the ALJ erred in his assessment of the weight to be afforded to Dr. Weber's consultative examination, the ALJ erroneously "played doctor" and provided his own interpretation of the medical records pertaining to Plaintiff's small fiber neuropathy, and the ALJ's credibility assessment was flawed. Further consideration of those claimed errors on remand will aid in reaching a final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 23rd day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge